2006 ME 93

**Fredric LEWIS**

v.

**Mark KEEGAN et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 21, 2005.
Decided: July 28, 2006.

---

Karen E. Wolfram, Esq. (orally), Daniel Lilley Law Offices, Portland, for the plaintiff.

Kaighn Smith, Esq. (orally), Melissa Hewey, Esq., Drummond, Woodsum & MacMahon, Lisa Fitzgibbon Bendetson, Esq., Thompson & Bowie, 3 Canal Plaza, Portland, for the defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] School administrators Mark Keegan and John Tourtilotte [1] appeal from the

---

1. The original complaint also named the Town of Boothbay Harbor as a defendant. The Superior Court granted the Town's motion for summary judgment and the Town is not a party to this appeal. Steve Clark, the Chief of Police for Boothbay Harbor, does not appeal from the denial of his separate motion for summary judgment. The Boothbay Har-

denial of their motion for summary judgment by the Superior Court (Lincoln County, *Marden, J.*). They argue that the court should have entered a summary judgment in their favor because they are immune from tort liability pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101–8118 (2005). We conclude that the summary judgment was denied on the basis of factual disputes related to the individual causes of action, and not on the basis of governmental immunity. Accordingly, because the appeal does not fall within an exception to the final judgment rule, we dismiss Keegan and Tourtilotte's appeal as interlocutory.

## I. BACKGROUND

[¶ 2] Fredric Lewis was an industrial arts teacher at Boothbay Harbor High School for approximately twenty-three years, beginning in 1977. In 2001, John Tourtilotte, the high school principal, and Steve Clark, the Boothbay Harbor Chief of Police, conferred regarding a complaint for criminal trespass that was pending against Lewis[2] and an unrelated allegation that Lewis had engaged in improper sexual contact with a former student. At some point, Tourtilotte reported this information to Mark Keegan, the superintendent of the Boothbay Harbor Community School District.

[¶ 3] Keegan then informed Lewis by letter of the allegations against him and, after a meeting with Lewis, placed Lewis on paid administrative leave. Tourtilotte began an investigation. Clark eventually informed Tourtilotte and Keegan that the allegations of improper sexual contact were actually against another School Dis-

trict employee with the same last name, not Fredric Lewis. Keegan and Tourtilotte continued their investigation due to the criminal trespass complaint against Lewis and other matters of concern that had arisen during the course of their investigation.

[¶ 4] Before the investigation was completed, Tourtilotte, Keegan, and Lewis met again. Tourtilotte and Keegan did not disclose what they had learned about the most recent allegations of sexual abuse. At the conclusion of the meeting, Lewis retired and signed a letter of resignation. The parties dispute whether Lewis's retirement decision was voluntary. Immediately following Lewis's resignation, Tourtilotte issued a letter to school employees via electronic mail stating:

> I would like to share with you as much information as I can. [Lewis] has retired/resigned and will not be teaching for the remainder of the year.... There are lots of rumors out there but I would caution that much of what is being said is rumor and should be treated as such.

[¶ 5] Lewis did not seek reinstatement. He eventually filed a complaint that included four tort claims—defamation, intentional infliction of emotional distress, false light, and tortious interference with contract—and a federal due process claim against Keegan and Tourtilotte. Lewis also alleged these claims against the School District, the Town of Boothbay Harbor, and the police chief. In addition, he alleged that the School District and the Town were vicariously liable for Keegan's, Tourtilotte's, and Clark's conduct, and he sought punitive damages.

bor Community School District, also named as a defendant, has not claimed discretionary function tort immunity pursuant to 14 M.R.S. § 8111 (2005). The District is not, therefore, a party to the appeal.

2. Lewis was later convicted of the criminal trespass charge.

[¶ 6] Keegan, Tourtilotte, and the School District filed a motion for summary judgment addressing each count individually. The bulk of their memorandum in support of summary judgment asserted the lack of any disputes of material fact regarding the elements of each tort claim. In the final half-page of their fifteen-page memorandum, they argued that Keegan and Tourtilotte are immune from the state tort claims pursuant to 14 M.R.S. § 8111 because they were performing discretionary functions in the scope of their employment. They did not address the facts relevant to a determination of discretionary function immunity. They asserted no argument that they were immune from Lewis's due process claim.[3]

[¶ 7] Lewis opposed the motion for summary judgment. In his accompanying memorandum, he first argued that genuine issues of material fact exist on each of his claims. He then argued that the defendants waived immunity by purchasing liability insurance, and that there are genuine issues of material fact regarding whether the defendants' acts were discretionary and within the scope of their employment.[4]

[¶ 8] After reviewing the summary judgment record and the parties' arguments, the Superior Court focused, as did the parties' pleadings, on the elements of the individual torts asserted against the defendants. The court denied the motion for summary judgment, concluding that genuine issues of material fact exist on each of Lewis's claims against the School District, Keegan, and Tourtilotte.

[¶ 9] Although the court noted that the issue of tort immunity had been raised, it did not determine whether Keegan or Tourtilotte were entitled to immunity as a matter of law. It did not address the issue of insurance as a waiver of immunity, nor did it address the capacity in which any of the defendants acted. The court simply did not determine whether the summary judgment record raised any genuine issues of material fact on the question of tort immunity.

[¶ 10] With regard to the due process claim, Keegan and Tourtilotte did not argue that they were immune. *See* 42 U.S.C.A. § 1983; *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Accordingly, the court determined only that there were genuine issues of material fact on the elements of the due process claim and did not address any potential immunity from the claim.[5]

[¶ 11] Keegan and Tourtilotte did not move to alter or amend the judgment pursuant to Rule 59(e). Instead, they immediately appealed from the judgment. In

---

3. *See* 42 U.S.C.A. § 1983 (2003); *Buckley v. Fitzsimmons,* 509 U.S. 259, 267–68, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

4. Keegan, Tourtilotte, and the School District responded that there were no genuine issues of material fact regarding any of the elements of Lewis's claims. They then argued that the insurance provisions of the Maine Tort Claims Act did not provide for individual defendants' waiver of immunity. They added a brief argument that school administrators perform a discretionary act when they supervise teachers.

5. The denial of summary judgment on the due process claim does not constitute a final judgment, *see Dep't of Human Servs. v. Hart,* 639 A.2d 107, 107 (Me.1994), and Keegan and Tourtilotte have not appealed from the court's ruling on this claim.

their appeal, Keegan and Tourtilotte do not dispute the court's conclusion that there are genuine issues of material fact regarding the elements of the specific tort claims alleged against them. They argue only that they are immune from liability pursuant to the MTCA. *See* 14 M.R.S. § 8111(1).

[¶ 12] Lewis moved to dismiss the appeal as interlocutory. We ordered that the parties brief the issue raised by this motion to dismiss, and we consider it in conjunction with the appeal.

## II. DISCUSSION

[¶ 13] We generally require the entry of a final judgment before an appeal will be allowed. *See Hayden v. Orfe,* 2006 ME 56, ¶ 6, 896 A.2d 968, 971. One of the few narrow exceptions to the final judgment rule, *see id.,* is the death knell exception, which permits immediate review when a party's substantial rights will be irreparably lost if we delay review until the entry of a final judgment, *see Fitch v. Doe,* 2005 ME 39, ¶ 9, 869 A.2d 722, 725. This exception applies when a court has denied a motion for summary judgment on the basis of sovereign or governmental immunity. *See Sanford v. Town of Shapleigh,* 2004 ME 73, ¶ 6, 850 A.2d 325, 328.

[¶ 14] A government employee is entitled to absolute immunity when he or she performs a discretionary act. 14 M.R.S. § 8111(1)(C). If the action of the government employee is found to exceed the scope of his or her discretion, that immunity may not apply. *See Richards v. Town of Eliot,* 2001 ME 132, ¶ 32, 780 A.2d 281, 292. Determining the scope of discretion may be possible on a summary judgment record. In some instances, however, it will not be ascertainable from the summary judgment record and will require determination by the fact-finder. *See, e.g., id.* ¶¶ 31–32, 780 A.2d at 292–93. If the government employee is found to have acted within the scope of his or her discretion, the absolute immunity provided by the MTCA will apply "whether or not the discretion is abused." 14 M.R.S. § 8111(1)(C).[6]

[¶ 15] Accordingly, to determine whether Keegan and Tourtilotte were entitled to immunity, the court would have to address facts that may be separate from the facts relevant to the individual torts asserted by Lewis. Here, for example, the court did not determine whether factual issues exist regarding the scope of discretion or the nature of the governmental acts involved. The court denied summary judgment due to factual disputes about the elements of Lewis's alleged causes of action and did not rule on the immunity issues.

[¶ 16] In these circumstances, where immunity was not even raised regarding the federal claim and where the court did not decide the issue of immunity regarding the state tort claims, we will not apply the death knell exception. We apply the exception only if the motion court denies a motion for a summary judgment based on a claim of immunity. *See Sanford,* 2004 ME 73, ¶ 6, 850 A.2d at 328. Here, the court denied summary judgment based entirely on disputes of material fact regarding the elements of the claims alleged by Lewis. A party may not immediately appeal from such a denial. *See Dep't of Human Servs. v. Hart,* 639 A.2d 107, 107 (Me.1994) (stating the general rule that "[t]he denial of a summary judgment

---

6. Due to the subtleties in applying these concepts, it is important that the parties focus on the facts relevant to the immunity at issue in addressing a summary judgment motion.

motion does not result in a final judgment").

[¶ 17] Accordingly, in the absence of a final judgment, and without an applicable exception to the final judgment rule, we dismiss Keegan and Tourtilotte's appeal as interlocutory.

The entry is:

Appeal dismissed.